UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| DEANDRE ARMOUR, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | No. 1:17-cv-00613-SEB-TAB |
| USA, | ) | |
| Respondent. | ) | |

**Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying a Certificate of Appealability**

For the reasons explained in this Entry, the motion of Deandre Armour for relief pursuant to 28 U.S.C. § 2255 must be **denied** and this action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

## I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## II. Factual Background

On December 9, 2014, Mr. Armour was charged in a five-count multi-defendant indictment. Mr. Armour was charged in Count One with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371. Count Two charged Mr. Armour with attempt to commit armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and 2. Count Three charged Mr. Armour with brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and (2). Count Four charged Mr. Armour with committing a carjacking, in violation of 18 U.S.C. §§ 2119 and 2. Count Five charged Mr. Armour with using or carrying a firearm in relation to a carjacking, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and 2.

On December 18, 2014, Mr. Armour appeared before Magistrate Judge Dinsmore for an initial appearance. Mr. Armour's charges, rights, and penalties were explained to him, and Mr. Armour waived a formal arraignment. Mr. Armour remained detained pending the trial.

A five day jury trial was held from January 12 to January 16, 2015. On January 21, 2015, a jury found Mr. Armour guilty of Counts 1, 2, and 3, but not guilty of Count 4. Because Count 4 was the predicate crime of Count 5, Count 5 was not considered by the jury. On May 29, 2015, Mr. Armour was sentenced to 324 months of imprisonment (60 months on Count 1, 240 months on Count 2, concurrent, and 84 months on Count 3, consecutive) to be followed by 5 years of supervised release. Mr. Armour was also assessed the mandatory assessment of $300 and a fine of $1,500. The Court entered a judgment on May 29, 2015.

Mr. Armour appealed his sentence. On November 1, 2016, the Seventh Circuit upheld his conviction and sentence on Counts 1 and 2, but vacated his sentence on Count 3. *See Armour v.*

*United States*, 840 F.3d 904 (7th Cir. 2017). The case was remanded for resentencing of the imprisonment portion of Count 3.

On February 2, 2017, this Court conducted a resentencing hearing, and again sentenced Mr. Armour to 324 months of imprisonment (60 months on Count 1, 240 months on Count 2, concurrent, and 84 months on Count 3, consecutive) to be followed by 5 years of supervised release. Mr. Armour was also assessed the mandatory assessment of $300 and a fine of $1,500. The Court entered a judgment of conviction on February 8, 2017. Mr. Armour did not appeal the second judgment.

On February 27, 2017, Mr. Armour filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. On March 2, 2017, the Court ordered the United States to respond to Mr. Armour's 28 U.S.C. § 2255 motion.

### III. Discussion

Mr. Armour seeks relief pursuant to § 2255 arguing that his counsel provided ineffective assistance for (1) failing to review allegedly exculpatory discovery material and failing to use this discovery material to adequately impeach government witnesses; (2) failing to investigate, call witnesses, and present an available alibi defense; (3) failing to object to the introduction of false testimony that counsel knew to be false. Mr. Armour further argues that there was prosecutorial misconduct as the prosecution allegedly knowingly used the testimony of Xavier Hardy and Tahitia Burnett that the prosecution knew to be false, and vouched for the veracity of this false testimony to the jury. Mr. Armour argues that but for his counsel's failure to properly impeach Hardy and Burnett, the government would not have been able to prove its case as almost the entirety of the case rested on the testimony of Hardy and Burnett. The United States argues that his trial counsel was not ineffective, nor has Mr. Armour been able to show any prejudice resulting

from that performance. Rather, the United States argues that his trial counsel was effective in securing a not guilty verdict on Count 4 and laying the groundwork for a remand for resentencing during the appeal process.

    A.    <u>Ineffective Assistance of Counsel</u>

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, Mr. Armour must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Mr. Armour seeks relief pursuant to § 2255 arguing that his counsel, Mr. McKinley, was ineffective for (1) failing to properly review allegedly exculpatory discovery material; (2) failing to investigate and call witnesses; and (3) failing to object to the introduction of false testimony that counsel knew to be false. Each of Mr. Armour's specifications of ineffective assistance is discussed below.

    *1. Failing to review FBI surveillance records*

Mr. Armour alleges Mr. McKinley was ineffective in failing to investigate potentially exculpatory F.B.I. surveillance records recorded between 6:25 a.m. and 12:43 p.m. of June 25, 2013. Mr. Armour argues this information would have completely impeached the testimony of

Hardy and Burnett as the records would have shown that he could not have met with Hardy or Burnett as they described in their testimony.

It is true that a defense attorney has a responsibility to reasonably investigate the circumstances of the case against his client. *See Bruce v. United States*, 256 F.3d 592, 587-89 (7th Cir. 2001). With respect to trial strategy, an attorney's trial strategy is "virtually unchallengeable" after counsel has conducted a thorough investigation of his client's case. *Sullivan v. Fairman*, 819 F.3d 1382, 1391 (7th Cir. 1987) (quoting *Strickland v. Washington*, 466 U.S. at 690-91). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

First, Mr. Armour fails to overcome the presumption that Mr. McKinley's failure to investigate potentially exculpatory F.B.I. surveillance records was not sound trial strategy. As an initial matter, Mr. Armour has not shown that Mr. McKinley failed to investigate the surveillance records. The F.B.I.'s surveillance of Mr. Armour between June 11 and June 26, 2013 was a significant part of the government's case, and it would be surprising that Mr. McKinley did not, at least, review the F.B.I's records. Moreover, it appears based on the correspondence between Mr. Armour and Mr. McKinley in 2016 that Mr. McKinley did review, at least, the Google Earth Yukon tracking data as he mentions "[a]s I recall, the disc also contains software that illustrates the various locations and times on Google Earth…I know I had trouble navigating through it originally." Dkt. 2-11 at 6. Moreover, Mr. Armour explains in his motion that he "had the discovery documents with him in the courtroom and attempted to use them to demonstrate the witnesses' perjury to his defense counsel," but Mr. McKinley allegedly declined to review the

documents or use them to impeach Hardy or Burnett, instead assuring Mr. Armour that he would raise the issue during closing argument. The record shows Mr. McKinley did in fact raise this exact issue of the surveillance and the inconsistencies in closing argument:

> But my recollection is that he's under surveillance all the way up to Fort Wayne. He's under surveillance in Fort Wayne that whole morning. Surveillance terminated up there sometime I think between 12:30 and 1:00. During that time period that Xavier Hardy says "Oh, I met with Mr. Armour" is what I think his testimony was. "I met with him." Well, it's curious that Mr. Armour is under surveillance that whole time that the surveilling agents didn't observe Mr. Armour meeting with Mr. Hardy.
> That's not even to begin to touch on the number of inconsistencies associated with the testimony of Tahitia Burnett and Xavier Hardy, and I will get back to that in a moment.
> They come down to Indianapolis, this caravan of vehicles. Of course Xavier Hardy says on the way, what do they do? Xavier Hardy as I recall said "We drove to the bank and we circled around the bank, and we conducted -- we kind of cased the bank, and Deandre Armour was showing us around the bank."
> Where is the minivan? He says "The minivan is following, circling all around this area." Well, that's just diametrically opposed to what Tahitia Burnett said. She testified "We went to a hotel. We drove down and we went to the hotel." She doesn't describe anything about being in the van following the Tahoe around the bank on their way down to Indianapolis.

Tr. at Vol. 5 at 824:1-825:1. Mr. Armour therefore has failed to show that his counsel failed to review the FBI surveillance records.

Furthermore, Mr. Armour has failed to establish that Mr. McKinley's conduct was prejudicial. He alleges that prosecution's case relied solely on the testimony of Hardy and Burnett. Prosecution had approximately 23 witnesses testifying to the multi-day surveillance of Mr. Armour, the events leading to and during the bank robbery, and the apprehension of the Mr. Armour and others after the robbery. The jury trial spanned over the course of five days with witnesses testifying on three of those days. Hardy and Burnett's testimony alone encompassed significant portions of the trial transcript. It is unlikely that the impeachment of one small portion of Hardy's and Burnett's testimony would call into question the entirety of their testimony or the

entirety of the government's case. Rather than being ineffective, the record reflects that Mr. McKinley appears to have reasonably defended Mr. Armour. Thus, Mr. McKinley's alleged failure to investigate cannot be considered ineffective assistance of counsel.

   2. *Failing to call witnesses*

Mr. Armour alleges that Mr. McKinley was ineffective in failing to call Olivia Haiflich, Keiosha McClendon, Lahbeeba Armour, and Shandon Berry as potential alibi witnesses. In support of his petition, he attaches affidavits with what would allegedly have been their testimony.

"The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016), quoting *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). "Rather, counsel need only investigate possible lines of defense and make an informed decision." *Id.* "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *Best*, 426 F.3d at 945. Strategic decisions like these, so long as they are made after a thorough investigation of law and facts, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Beginning with Shandon Berry, Ms. Berry was identified as a potential witness at trial. However, the trial record shows that Ms. Berry sought the advice of counsel, and after Mr. McKinley consulted with Ms. Berry's lawyer, Mr. McKinley decided it was in Mr. Armour's best interest not to call her as a witness. The exchange at trial was as follows:

> MR. McKINLEY: Your Honor, based on discussions with counsel for Ms. Berry, it is my choice or my decision not to call her as a witness. It is the defense -- the defense anticipates to rest without presentation of evidence simply relying on the presumption of innocence. The Court may wish to confirm with Mr. Armour that he elects to stand on his Fifth Amendment right not to testify, but that's the indication that I have from communication with my client.
> THE COURT: All right, Mr. McKinley. I will inquire of you, Mr. Armour, if you intend to invoke your Fifth Amendment privilege not to testify in the trial; is that your intention, sir?
> THE DEFENDANT: Yes, ma'am.

> THE COURT: Is that a decision that you've made after you consulted with Mr. McKinley but otherwise on your own?
> THE DEFENDANT: Yes, ma'am.

Tr. at Vol. V, 785:9-25.

Ms. Berry was identified as a witness, brought to trial, and affirmatively not brought in as a witness, a decision Mr. Armour did not object to at trial. Thus, Mr. McKinley's failure to call Ms. Berry as a witness at trial appears to have been a reasonable strategic decision. *See Best*, 426 F.3d at 945.

As to Olivia Haiflich, Ms. Haiflich was suspected of being part of the bank robbery conspiracy and was arrested along with Mr. Armour. However, she was never indicted. Given her possible participation in the events in question, it is reasonable to understand Mr. McKinley's unwillingness to have her take the stand and be subject to cross-examination. Moreover, having reviewed her affidavit, the statement appears to be consistent with the government's theory of the case and does not appear to have any impeachment value such that there was any prejudicial effect from Mr. McKinley's alleged failure to include her testimony.

Ms. McClendon provided a short statement in support of Mr. Armour that merely stated that Mr. Armour arrived at the Island Club apartments in the afternoon of June 25, 2013 in a black GMC Yukon and did not leave until around 1:30-2pm that day. It is unclear what value Ms. McClendon's testimony would have provided to Mr. Armour's case. It is neither exculpatory nor relevant beyond placing him briefly in one location. She does not testify regarding June 26, 2013 (the day of the robbery) and is thus not an alibi witness, and her statement is not direct impeachment of Hardy and Burnett's testimony. Accordingly, it was likely Mr. McKinley's informed decision to not pursue this line of testimony.

Finally, as to Lahbeeba Armour, the sister of Mr. Armour, she stated that she went to Island Club apartments to pick up Mr. Armour around 1:30-2pm. After returning to her home, he was picked up by a friend. Similar to the testimony of Ms. McClendon, it is unclear how Ms. Armour's testimony would have assisted Mr. Armour's case. Her testimony fails to provide an alibi. Moreover, as Mr. Armour's sister, it is likely that a jury would have assumed she was biased in favor of her brother. Thus, it is not surprising that Mr. McKinley also did not pursue this line of testimony.

Accordingly, Mr. McKinley's failure to call or investigate these witnesses was a reasonable strategy decision and not ineffective assistance of counsel.

### 3. *Failing to Object*

Mr. Armour alleges that Mr. McKinley was ineffective in failing to object to false testimony from Hardy and Burnett. First, Mr. Armour fails to overcome the presumption that Mr. McKinley's failure to object amounted to sound trial strategy. *Strickland*, 466 U.S. at 689. Furthermore, Mr. Armour has failed to establish that Mr. McKinley's conduct was prejudicial. The record reflects that Hardy and Burnett's testimony covered a wide variety of topics beyond what precise time they met up with Mr. Armour the day of June 25, 2013. While Hardy and Burnett testified that they met in the morning, surveillance of Mr. Armour ended that day at 12:43pm. A small inconsistency in timing on one item in a long testimony is unsurprising. Moreover, Mr. McKinley extensively cross-examined both Hardy and Burnett and re-cross-examined Hardy. Rather than being ineffective, Mr. McKinley appears to have vigorously attempt to impeach Hardy and Burnett's testimony. Thus, Mr. McKinley's alleged failure to object cannot be considered ineffective assistance of counsel.

B.     Prosecutorial Misconduct

Mr. Armour argues that there was prosecutorial misconduct as the prosecution allegedly knowingly used the testimony of Xavier Hardy and Tahitia Burnett that the prosecution knew to be false, and vouching for the veracity of this false testimony to the jury.

The Supreme Court has clearly established that a prosecutor's knowing use of perjured testimony violates the Due Process Clause. *See Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999), citing *United States v. Agurs*, 427 U.S. 97 (1976); *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Mooney v. Holohan*, 294 U.S. 103, 110 (1935) (per curiam). The Court requires that a conviction obtained by such knowing use of perjured testimony be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103.

However, Mr. Armour has provided no proof that the testimony of Hardy and Burnett was false nor that the prosecution knew that the testimony was false. The veracity of their testimony and the weight to be given to their testimony was appropriately left for the jury to decide. Thus, it is unlikely there was prosecutorial misconduct in this case.

## IV. Conclusion and Certificate of Appealability

For the reasons explained in this Entry, Mr. Armour is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel and his sentence is not unconstitutional. Accordingly, his motion for relief pursuant to § 2255 is **denied** and this action is dismissed with prejudice. Judgment consistent with this Entry shall now issue and **a copy of this Entry shall be docketed in No. 1:13-cr-159-SEB-DKL-1.**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Hicks has failed to

show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 2/13/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEANDRE ARMOUR
11606-028
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE
bob.wood@usdoj.gov